JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY MACCARTHY, an individual,<br><br>                    Plaintiff,<br><br>     v.<br><br>ARCEE AI, INC., a Delaware Corporation and DOES 1 through 50, inclusive<br><br>                  Defendants. | Case No. 2:25-cv-06835-SPG-MBK<br><br>**ORDER GRANTING MOTION TO REMAND [ECF NO. 15]** |

Before the Court is a Motion to Remand (ECF No. 15 ("Motion")) filed by Plaintiff Mary MacCarthy ("Plaintiff"). Defendant Arcee AI, Inc. ("Defendant" or the "Company") timely opposed (ECF No. 18 ("Opp.")), and Plaintiff replied (ECF No. 28 ("Reply")). The Court has read and considered the parties' submissions and concludes that the Motion is suitable for decision without oral argument. *See* Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15. Having considered the submissions, the relevant law, and the record in this case, the Court GRANTS the Motion.

I.  **Background**

    A.  **Factual Background**

Arcee AI was founded by Mark McQuade, as its Chief Executive Officer; Jacob Solawetz, as its Chief Technology Officer; and Brian Benedict, as its Chief Revenue

Officer. *See* (ECF No. 3-1 ("Compl.") ¶ 9). Plaintiff was personally recruited by Benedict for a position as the Company's Head of Growth and Marketing. *See* (*id.* ¶ 10). Shortly after she joined the Company, Benedict allegedly began to make "inappropriate, gender-coded" comments about Plaintiff, including by commenting on "her physique," asking "intrusive questions about her dating life," and using "sexually explicit language." (*Id.* ¶ 11). After the Company received a $24 million funding round in June 2024, Benedict's behavior allegedly escalated. *See* (*id.* ¶ 13). He began to yell, demean, and threaten to fire Plaintiff and another female executive on a "near-daily" basis. (*Id.*). Plaintiff's male colleagues told her they "had never witnessed him subject male employees to similar treatment." (*Id.* ¶ 14).

In August 2024, Plaintiff met with Benedict to discuss his behavior. *See* (*id.* ¶ 19). However, Benedict refused to apologize or change his behavior. *See* (*id.*). On January 28, 2025, Plaintiff reported Benedict's conduct to McQuade and Solawetz. *See* (*id.* ¶ 24). Shortly thereafter, McQuade began to "systematically exclude[] Plaintiff from key meetings" and withhold "essential information needed to execute her responsibilities as Head of Product Marketing." (*Id.* ¶ 30). In late March 2025, McQuade told "a senior male employee that he wanted to fire Plaintiff but felt it was too soon after her hostile workplace complaint," so "he would find a 'legally safe' reason to oust her as soon as he could." (*Id.* ¶ 33). In early April 2025, the Company's Human Resources Department scheduled a meeting between McQuade and Plaintiff, where McQuade "implicitly pressur[ed] her to resign." (*Id.* ¶ 38). In May 2025, McQuade "remove[d] . . . four women who had filed hostile workplace complaints," "presenting the women's terminations as part of a 'Reduction in Force.'" (*Id.* ¶ 43). "On May 21, 2025, Plaintiff questioned the lack of transparency around the layoffs and pointed out the disparate treatment of women." (*Id.* ¶ 46). Plaintiff was summarily terminated the same day. *See* (*id.* ¶¶ 46–48).

**B.   Procedural Background**

Plaintiff filed this action in the Los Angeles County Superior Court on June 13, 2025, alleging claims for gender discrimination, sexual harassment, retaliation, and wrongful

termination under California law. *See* (*id.* ¶¶ 51–106); *see also* (*id.* at 26). Plaintiff served Defendant on June 27, 2025, and Defendant timely removed to federal court on July 25, 2025. *See* (ECF No. 1 ("Notice of Removal") ¶ 4); *see also* (ECF No. 3-2, Ex. B, at 2). In the Notice of Removal, Defendant invokes the Court's diversity jurisdiction, alleging that Plaintiff "is a citizen of the State of California" and Defendant is "a Delaware corporation with its principal place of business and headquarters in Florida." (Notice of Removal ¶¶ 13, 15). On August 28, 2025, Plaintiff filed this Motion to Remand. *See* (Motion).

## II.   Legal Standard

Federal courts are courts of limited jurisdiction, having subject-matter jurisdiction only over matters authorized by the Constitution and Congress. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A defendant may remove a civil action filed in state court to federal court if the federal court would have had original jurisdiction over the suit. *See* 28 U.S.C. § 1441(a). Federal courts have original jurisdiction where an action arises under federal law, 28 U.S.C. § 1331, or where each plaintiff's citizenship is diverse from each defendant's citizenship and the amount in controversy exceeds $75,000, exclusive of interest and costs, 28 U.S.C. § 1332(a).

Once an action is removed, a plaintiff may seek remand by making either a "facial" or "factual" challenge to the defendant's jurisdictional allegations in the notice of removal. *Harris v. KM Indus., Inc.*, 980 F.3d 694, 699 (9th Cir. 2020). "A facial attack accepts the truth of the defendant's allegations but asserts that they are insufficient on their face to invoke federal jurisdiction." *Id.* (internal quotation marks and citation omitted). "A factual attack contests the truth of the allegations themselves." *Id.* (internal quotation marks and citation omitted). Where a plaintiff seeks remand of the action by mounting a "factual" challenge to the removing defendant's jurisdictional allegations, the burden is on the removing defendant to provide "competent proof" showing by a preponderance of the evidence that the jurisdictional requirements are satisfied. *Id.* at 701. When determining jurisdiction based on a factual attack, a court may view evidence beyond the complaint and

from Mark McQuade.[2] Defendant has also filed an evidentiary objection to Plaintiff's initial declaration in support of her motion to remand. *See* (ECF No. 20). However, Defendant has not filed any objection to the Supplemental MacCarthy Declaration, the Kim Declaration, the Smith Declaration, or the Nason Declaration. Because the statements in those declarations are sufficient to raise doubt as to whether the Court possesses subject matter jurisdiction, *see Gaus*, 980 F.2d at 566, the Court declines to address Defendant's evidentiary objections to the initial MacCarthy Declaration.

According to those declarations, the Company was initially "fully remote" and "there was no dedicated physical office space." (Nason Decl. ¶ 3); *see also* (Kim Decl. ¶ 3). However, as the Company sought to raise additional capital, "one of its primary investors, who also served as [the Company's] only board member, began pressuring leadership to establish a presence in the San Francisco Bay Area." (Kim Decl. ¶ 4); *see also* (Suppl. MacCarthy Decl. ¶ 4). By the end of 2024, the Company planned to open a San Francisco office, *see* (Kim Decl. ¶ 6), and "the consistent message internally was that the [C]ompany's headquarters would be moving to San Francisco," (Smith Decl. ¶ 4).

Around the same time, the Company began encouraging employees to relocate to San Francisco, *see* (MacCarthy Suppl. Decl. ¶ 7), and at least some employees were required to relocate as a condition of their continued employment, *see* (Nason Decl. ¶¶ 6, 8, 11). In February 2025, McQuade told employees that Benedict was leaving the Company because he refused to relocate to San Francisco. *See* (MacCarthy Suppl. Decl. ¶ 6); *see also* (Smith Decl. ¶ 7). In or around March, Luke Atkins, who succeeded Solawetz as the Company's Chief Technology Officer, relocated to San Francisco. *See* (Smith Decl. ¶¶ 3, 5–6); *see also* (Suppl. MacCarthy Decl. ¶¶ 8, 11). In spring 2025, the Company began to set up a new San Francisco office. *See* (Suppl. MacCarthy Decl. ¶ 12). In May, the Company "began using a new address on Market Street in San Francisco on many of its internal documents." (Kim Decl. ¶ 9). The Company also "officially instructed

---

[2] *See* (ECF No. 19, Declaration of Mark McQuade ("McQuade Decl.")).

[employees] to communicate to customers that [its] headquarters was now located in San Francisco" and updated "all sales and marketing materials [to] . . . list a San Francisco mailing address." (Smith Decl. ¶¶ 7–8). In June, McQuade and his family moved to Burlingame, California. *See* (Suppl. MacCarthy Decl. ¶ 5); *see also* (Nason Decl. ¶ 10).

Based on the evidence summarized above, Plaintiff has provided sufficient facts to show that the Company's "high level officers direct, control, and coordinate the [Company's] activities" from California, not Florida. *Hertz Corp. v. Friend*, 559 U.S. 77, 80–81 (2010) (company's principal place of business determined by location of corporate "nerve center"). Therefore, the Court lacks diversity jurisdiction and, as such, GRANTS Plaintiff's Motion to Remand. However, the Court DENIES Plaintiff's Motion insofar as Plaintiff seeks fees and costs. *See* (Motion at 9–10). Under 28 U.S.C. § 1447(c), "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." However, absent unusual circumstances, courts will only award fees and costs under § 1447(c) where "the attempted removal was objectively unreasonable." *Houden v. Todd*, 348 F. App'x 221, 223 (9th Cir. 2009); *see also Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 136 (2005). In support of removal, Defendant has submitted evidence to show that the Company's 2023 Delaware franchise tax report, 2024 federal income tax return, and 2024 Florida business license all list the Company's principal place of business at an address in Venice, Florida, as do the Form 1099 that the Company issued to Plaintiff for fiscal year 2024 and Plaintiff's May 2025 pay statement. *See* (ECF Nos. 19-1, Ex. 1, 19-3, Ex. 3, 19-4, Ex. 4, 19-6, Ex. 6, 19-7, Ex. 7). Although this evidence is insufficient for Defendant to meet its burden, the attempted removal was not objectively unreasonable.

//
//
//
//
//

//

## IV. Conclusion

For the foregoing reasons, the Court GRANTS the Motion.

**IT IS SO ORDERED.**

DATED: October 31, 2025

_____
HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE